IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MALISSIA BUSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:14-cv-03113-NKL |
| | ) | |
| CAROLYN W. COLVIN | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Malissia Busby seeks review of the Administrative Law Judge's decision denying her application for Social Security benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is affirmed.

I.    **Background**

   **A. Busby's Medical History**

In July 2011, a CT scan revealed that Busby had suffered a stroke. [Tr. 258]. After an operation and administration of medications, her blood pressure decreased. [Tr. 275-276]. Upon discharge, she was not symptomatic and was ambulating well. *Id.* At her August 2011 postoperative follow up appointment, Busby's doctor noted that her sensation was intact and strength was normal in all four extremities. [Tr. 321].

In November 2011, Busby indicated in a function report that she had no problem completing personal care activities on her own. [Tr. 186]. She was able to groom herself

and administer her own medications. [Tr. 187]. As of that time, she was capable of driving a car and grocery shopping by herself. [Tr. 188].

In January 2012, Busby underwent a consultative psychological examination with Dr. Terry L. Efird. Dr. Efird noted that Busby's speech was within reasonable limits and that she had logical, relevant, and goal-directed thought processes. [Tr. 349]. The doctor opined that Busby retained the capacity to perform basic cognitive tasks required to perform and persist with basic work like activities. [Tr. 351]. Later that month, Dr. Jeffrey Hull, an ear, nose, and throat specialist, concluded that Busby had a normal ability to communicate. [Tr. 360].

In July 2012, Busby's treating physician noted that she walked with a coordinated and smooth gait and had normal sensation and strength. [Tr. 393]. Her depression and anxiety were stable on medication. *Id.* In November 2012, her sensation and strength were again normal with no abnormalities in her extremities. [Tr. 392]. In January 2013, Busby did not complain of any pain, depression, or anxiety. [Tr. 390].

The ALJ held an administrative hearing prior to rendering his decision in this case. At the administrative hearing, Busby stated that she could not drive or grocery shop by herself because she gets confused. [Tr. 38-40]. She stated that her limbs get tired easily and that she has poor motor strength. [Tr. 40]. She complained of difficulties balancing and walking. [Tr. 46-49]. Her mother then testified and corroborated Busby's statements.

Case 6:14-cv-03113-NKL   Document 12   Filed 01/26/15   Page 2 of 8

### B. ALJ Decision

The ALJ denied Busby's request for disability benefits, concluding that Busby had the Residual Functional Capacity (RFC) to engage in substantial gainful activity. The ALJ concluded that despite Busby's severe impairments of status post intracranial hemorrhage, a cognitive disorder NOS, depression, anxiety, and hypertension, she retained the following RFC:

> [T]o perform light work as defined in 20 CRF 404.1567(b), in that, she can occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for approximately six hours in an eight-hour workday, and sit for approximately six hours in an eight-hour workday with normal breaks. The claimant also has the following nonexertional limitations that further limit her ability to perform light work: should never climb ladders, ropes, or scaffolds; limited to occasional balancing on level surfaces; should avoid exposure to noise above the moderate level (as defined in the SCO appendix to the DOT); should avoid workplace hazards such as unprotected machinery and unprotected heights; limited to the performance of simple, routine, and repetitive tasks that involve only simple work-related decisions with few, if any, workplace changes; should avoid all interaction with the general public; and can be around coworkers throughout the day, but is limited to only incidental interaction with those coworkers.

[Tr. 17].

In determining Busby's RFC, the ALJ considered Busby's testimony at the administrative hearing, along with the medical evidence of the record. The ALJ concluded that Busby's complaints at the administrative hearing were not entirely credible, as they were not supported by the medical evidence of the record. The ALJ consulted a vocational expert at the administrative hearing and inquired as to an individual's ability to maintain employment with Busby's RFC. The vocational expert

3

testified that there would be jobs available for a person with Busby's limitations. Relying on that testimony, the ALJ concluded that Busby could maintain substantial gainful employment, and was not entitled to benefits.

## II.     Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III.    Discussion

Busby argues that the ALJ erred in failing to properly consider whether she met Listing 11.04. The Court concludes that the ALJ properly weighed the evidence of the record and that Busby does not meet the requirements of the Listing.

In determining whether a claimant qualifies for Social Security benefits, the ALJ must decide whether the claimant's severe impairments or combination of impairments meet or exceed the criteria of an impairment set out in the Listings. 20 C.F.R. Part 404, Subpart P, Appendix 1. If a claimant's impairments meet or exceed the elements of one of the listings, she must be considered disabled and is entitled to receive benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

4

Busby argues that the ALJ did not properly consider whether her impairments met Listing 11.04. The Listing sets out the qualifications for an impairment arising out of a "[c]entral nervous system vascular accident." Under Listing 11.04, a claimant is disabled if she is afflicted "[w]ith one of the following more than 3 months post-vascular accident":

> A. Sensory or motor aphasia resulting in ineffective speech or communication; or
> B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.04. The "persistent disorganization of motor function" is defined as:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00C.

The ALJ did not specifically address whether Busby meets the qualifications of Listing 11.04 in his discussion. Failing to discuss whether the claimant meets the qualifications of a Listing does not, however, automatically constitute error. "There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). In this case, the ALJ's determination that

5

Busby was not entitled to benefits, and implicit conclusion that Busby does not meet the qualifications of Listing 11.04, is supported by substantial evidence of the record.

Busby's medical records make clear that she does not meet the requirements of subpart A of the Listing. In January 2012, an ear, nose, and throat specialist examined Busby and opined that she had a normal ability to communicate. [Tr. 360]. Nothing in her records suggest that she struggled to speak or communicate effectively.

Busby contends that her physical and cognitive dysfunction cause her to meet subpart B of the Listing. At the administrative hearing regarding Busby's request for benefits, she testified that she struggles to pick things up like she did before her stroke, has no energy, gets dizzy, and does not have good balance. She testified that she is no longer able to cook or drive because she forgets what she is doing.

Contrary to Busby's claims, her medical records from August 2011 through January 2013 indicate that she is fairly mobile and generally able to move about with a normal gait. [Tr. 390]. In October and December 2011, two state agency medical consultants found that Busby's activities did not suggest any sensory, speech, or motor dysfunction, and a neurological examination showed normal motor and sensory skills. [Tr. 340-345]. Other examiners noted similar functional abilities in January, July, and November 2012. At an appointment in January 2013, Busby did not complain of any pain.

Doctors' reports also indicate that Busby maintains a relatively average to low average cognitive ability. In January 2012, Busby was able to recall five digits forward and three digits backwards. She spontaneously recalled three of three items immediately

and two of three items after a five-minute delay. She was able to perform serial threes at an adequate pace. These records are directly contradictory to Busby's claims of debilitating confusion. The ALJ's decision to discount Busby's testimony due to these discrepancies is supported by substantial evidence.

Busby cites a number of doctors' notes reiterating Busby's complaints of motor and cognitive dysfunction. Though the record reflects that Busby has consistently complained of functional difficulties since her stroke in 2011, her doctors' conclusions have consistently been that despite her complaints and mild limitations, Busby is "capable of performing basic work like tasks within a reasonable time frame." [Tr. 351]. Given the medical findings in the record, substantial evidence supports the ALJ's decision to discount Busby's credibility and the conclusion that Busby does not meet the qualifications of the Listings.

The record also supports the ALJ's determination of Busby's RFC. The RFC appropriately limits Busby to light work and restricts her to simple, nonhazardous tasks that require little interaction with others. Though Busby may struggle to complete activities like cooking and driving, she admits that she is able to take care of her own hygienic needs and complete simple tasks like making sandwiches. Her ability to complete these activities corresponds with the medical opinions of the record, which consistently recognize Busby's ability to complete simple tasks requiring minimal exertion.

When the ALJ asked the vocational expert at the administrative hearing whether a person with Busby's RFC would be able to find substantial gainful activity, the

vocational expert responded that jobs would be available, including that of a stenciler, power-screwdriver operator, and patching-machine operator. Busby argues that the jobs identified by the vocational expert all require the ability to use her hands, which she cannot do since her stroke. As previously discussed, however, Busby's complaints are not supported by the record. Following her postoperative follow up appointment in August 2011, after her stroke, Busby was evaluated with intact sensation and normal strength in all four extremities. [Tr. 321]. As such, it was unnecessary for the ALJ to further limit Busby's RFC, and his conclusion that Busby is capable of maintaining substantial gainful activity is supported by substantial evidence of the record.

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 26, 2015
Jefferson City, Missouri